**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**JOHN A. PARKINS, JR.**
*JUDGE*

**NEW CASTLE COUNTY COURTHOUSE**
**500 NORTH KING STREET, SUITE 10400**
**WILMINGTON, DELAWARE 19801-3733**
**TELEPHONE: (302) 255-2584**

February 19, 2015

John S. Taylor, Esquire
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, Delaware 19801

Sean A. Motoyoshi, Esquire
Office of the Public Defender
Carvel State Office Building
820 North French Street, 3rd Floor
Wilmington, Delaware 19801

> **Re: State of Delaware v. Tremayne U. Washington**
> **ID No. 1409001507**

Dear Counsel:

At the call of the trial calendar this morning the State raised for the first time the possibility that Mr. Motoyoshi, an employee of the Office of the Public Defender, had a conflict because that office[1] previously represented one of the State's witnesses in unrelated and now-closed matters. The State contended that the mere appearance of a conflict precludes Mr. Motoyoshi from representing the instant defendant. Mr. Motoyoshi denied he had any conflict, and the court agrees with him.

---

[1] The State did not suggest that Mr. Motoyoshi himself represented the witness.

There is no doubt that the Sixth Amendment right to counsel encompasses a right to counsel who is free from actual conflict and whose loyalties are not divided between the defendant and someone else. In most instances such conflicts arise in the context of joint representation of co-defendants.[2] But it is also possible that a conflict of constitutional dimension can arise where defense counsel also represents a witness. In *Mirabal v. State,* the defendant, a passenger in a car, and the driver were arrested for possession of drugs.[3] The Public Defender represented both, but the charges against the driver were resolved prior to trial.[4] At trial Mirabal unsuccessfully sought to argue that the driver of the car, not he, was the possessor of the drugs.[5] Mirabal was convicted and appealed.[6] On appeal the Supreme Court reversed the conviction because of the divided loyalties of Mirabal's counsel, writing:

> In this case, Mirabal has shown an actual conflict of interest in the Public Defender's dual representation of Mirabal and Stafford. That conflict prevented trial counsel from calling Stafford as a witness out of concern that she would either invoke her Fifth Amendment rights or potentially make self-inculpatory statements on the witness stand. Because trial counsel's divided loyalties diminished Mirabal's ability to present his defense that the drugs were Stafford's and not his, Mirabal was denied his right to effective assistance of counsel under the Sixth Amendment.[7]

---

[2] *E.g., Lewis v. State*, 757 A.2d 709, 714 (Del. 2000).
[3] 86 A.3d 1119, 2014 WL 1003590, at *1 (Del. 2000) (TABLE).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* at *2.

2

The mere existence of a *possible* conflict, as opposed to an *actual* conflict, is insufficient to establish a Sixth Amendment violation. According to the United States Supreme Court, the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."[8] There is no actual conflict here because there is no sign of any divided loyalties. Consequently, the instant case presents none of the concerns found in *Mirabal.* First, the court notes that the Public Defender's representation of the witness related to matters wholly unrelated to this case. Second, the State does not argue that there is any likelihood that the defendant would use information beyond the witness's prior record to impeach the witness.[9] But those convictions are matters of public record and do not involve client confidences exchanged between the witness and the Public Defender. Consequently, Mr. Motoyoshi will not be called upon to make the Hobson's choice of either representing his client or preserving a former client's confidences. Here he can do both. Moreover, this is not a case in which the Public Defender is simultaneously representing both the defendant and the witness. Accordingly, the court need not reach the question whether disqualification is required in such instances.

---

[8] *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980).

[9] *See* D.R.E. 608(b)("Specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility, other than a conviction of crime . . . may not be proved by extrinsic evidence.").

The court notes that there are practical problems associated with disqualification of the Public Defender here. During a side bar at this morning's calendar the prosecutor brought to the court's attention that the Office of the Public Defender had previously represented the witness at violation of probation hearings. As a service to this court, with the exception of instances in which there is a privately retained attorney, the Office of the Public Defender represents all probationers who are charged with a probation violation. Disqualifying the Office of the Public Defender from representing a defendant merely because that office had previously represented a witness in the witness's unrelated violation of probation hearing would place a substantial burden on the State's already overburdened resources. In the absence of a constitutional demand to the contrary, the court is unwilling to require this.

The court expresses its disappointment that this issue was not raised until the very morning of trial when cases were being assigned to the judges. The identity of the witness and his lengthy criminal record have been known to the State for some time. Yet it was not until the literal eve of trial that the State thought to check to see whether Mr. Motoyoshi's representation of the instant defendant would present a problem. The difficulty of this last-minute notice was compounded by the fact that the State did not provide the court with any legal authority, thus leaving it to conduct its own research on the issue during a break which lasted roughly half an hour. The court understands that prosecutors often receive assignments at the last minute

and that, with their heavy workload, matters such as this may occasionally escape notice. But when this occurs counsel should, at a minimum, come prepared with legal authorities to provide the court with some sort of guidance. This did not happen here. This being said, the court is appreciative that counsel raised the issue rather than simply remaining silent.[10]

Very truly yours,

John A. Parkins, Jr.

oc:     Prothonotary

---

[10] When the State raises the possibility of a conflict involving defense counsel, the court is obligated to determine whether an actual conflict exists. *Bonin v. California*, 494 U.S. 1039, 1041 (1990) (citing *Wood v. Georgia*, 40 U.S. 261, 272 & n.18 (1981)).